IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| DAVID A. RENO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 19-00418 ACK-WRP |
| ) | |
| SCOTT U. NIELSON, individually) | |
| And in his capacity as Police ) | |
| Officer; HONOLULU POLICE ) | |
| DEPARTMENT; CITY AND COUNTY ) | |
| OF HONOLULU, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

For the reasons discussed below, the Court GRANTS Defendant the City and County of Honolulu's Motion to Dismiss, ECF No. 34 ("City's Mot."), as to all of Plaintiff's federal law claims; GRANTS Defendant Scott Nielson's Motion to Dismiss, ECF No. 35 ("Nielson's Mot."), as to all of Plaintiff's federal law claims; and in its discretion declines supplemental jurisdiction over Plaintiff's remaining state law claims.

## BACKGROUND

This case arises from an encounter between Plaintiff David Reno ("Plaintiff") and Defendant Officer Scott Nielson ("Defendant Nielson"). On August 5, 2019, Plaintiff filed a

- 1 -

complaint asserting claims for constitutional and state law
violations against Defendant Nielson both in his individual and
official capacities, against the Honolulu Police Department
("HPD"), and against the City and County of Honolulu (the
"City," and, collectively with Defendant Nielson and HPD,
"Defendants").  ECF No. 1.  The Court dismissed the complaint
for failure to state a claim on December 17, 2019.  ECF No. 29.
Plaintiff filed an amended complaint on January 16, 2020, again
asserting claims for constitutional and state law violations
against Defendants.  ECF No. 31 ("Amended Complaint" or "FAC").
The following facts are drawn from Plaintiff's Amended
Complaint.

      Plaintiff sought to document with HPD a matter
involving his insurance agent allegedly falsifying information
on Plaintiff's insurance documents.  FAC at 5.  Plaintiff
previously reported the matter to the state attorney general's
office but wished to provide HPD with the same complete set of
documents and evidence, as well as a two-page statement
summarizing the contents.  FAC at 5 and Ex. C.  Plaintiff met
with Defendant Nielson on August 4, 2017 in an effort to do so.
FAC at 5.

      Defendant Nielson initially refused to take
Plaintiff's information and indicated this was because,
according to Plaintiff, the state attorney general's office was

already looking into the matter.  FAC at 5-6 and Ex. B at 6-8.
Defendant Nielson stated that "[w]e don't just give report
numbers to document[s]."  FAC at 6 and Ex. B. at 8.  Plaintiff
realized partway through the encounter that he had been filming
the interaction on his cell phone and pointed his cell phone
camera at Defendant Nielson.  FAC at 6.  At this time, Defendant
Nielson recognized Plaintiff was recording the interaction.  FAC
at 6.  Defendant Nielson then accepted Plaintiff's statement and
issued Plaintiff a report number.  FAC at 6-7.

On August 21, 2017, Plaintiff inquired with HPD about
his statement and learned that Defendant Nielson's police report
was the only document that had been filed in HPD's records; the
documents and CD that he gave to Defendant Nielson were not.
FAC at 13; Opp. at 10.[1/]  Plaintiff filed two administrative
complaints against Defendant Nielson through HPD's Professional
Standards Office and was informed these complaints were
"sustained."  FAC at 13.  HPD did not permit Plaintiff to file a
criminal complaint against Defendant Nielson.  FAC at 13.

Plaintiff alleges that Defendant Nielson's conduct was
in keeping with the City and HPD's unwritten and other
unspecified policies, which permit a culture of corruption or

_____

[1/] Plaintiff filed two oppositions, one to each the City's Motion to
Dismiss and Defendant Nielson's Motion to Dismiss.  ECF Nos. 38, 39.  Except
the caption, the oppositions are identical (as are large portions of the
motions themselves).  Because there is no difference, the Court refers to
both documents generally as "Plaintiff's Opposition," or "Opp."

culture of immorality by allowing public officials to depart from written policies and failing to enforce the law against them.  FAC at 14-16.  This is evidenced by HPD's refusal to permit Plaintiff to file a criminal complaint against Defendant Nielson, instead only permitting him to file administrative complaints.  FAC at 13, 16.

Plaintiff asserts that Defendant Nielson's actions violated Plaintiff's First, Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution.  FAC at 5; 19-34.  Plaintiff also asserts an "Other" cause of action that "Defendants are liable for their misconduct while acting under corrupt and immoral policies, procedures and accepted practices, including, but not limited to, negligence, recklessness, malice, as well as, intentional infliction of severe emotional distress."  FAC at 35-41.  Plaintiff seeks (1) an order requiring Defendant Nielson's allegedly falsified police report to be permanently withdrawn; (2) punitive damages "for the negligent, intentional infliction of emotional distress"; (3) damages for willful malice, negligence and civil rights violations because "the 'peace of mind' associated with Police Officers, Law Enforcement which I once enjoyed, is forever gone"; (4) damages for loss of earnings; and (5) that "an example be made of Nielson, and against all Defendants in this case."  FAC at 46-47.

On January 23, 2020, Plaintiff filed an Addendum to the Amended Complaint, ECF No. 32 ("Add.").  Plaintiff therein asserts that there were five violations of his due process rights, rather than only one as stated in his Amended Complaint, Add. at 2-3; asserts that there were four separate violations of his Fifth Amendment rights, Add. at 4; and elaborates on his claims under the Fourth and Fourteenth Amendments, Add. at 4-6. Plaintiff adds a citation to 18 U.S.C. § 242, but acknowledges the action is not a criminal case.  Add. at 6-7, 9.  Plaintiff appears to request the Court order HPD to accept all statements from citizens with a rejected-for-cause basis for exclusion. Add. at 7.  Plaintiff further requests the Court order Defendant Nielson to disclose what he did with Plaintiff's documents after the August 4, 2017 interaction.  Add. at 9-10.

On February 6, 2020, Defendant the City and County of Honolulu and Defendant Nielson each filed a motion to dismiss for failure to state a claim.  ECF Nos. 34, 35.  Plaintiff filed oppositions to each of the motions to dismiss on February 26, ECF No. 38, 39, and Defendants filed a joint reply on March 24. ECF No. 41.  The Court held a telephonic hearing on April 7, 2020.[2]

---

[2] At the hearing, Plaintiff indicated some amenability to settling his case.  In light of this, the Court requested responses from the parties regarding the terms of a possible settlement.  See ECF Nos. 45, 51. Plaintiff ultimately decided to proceed with litigation.  ECF No. 57.

- 5 -

## STANDARD

### I.    Rule 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).

The Court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 784 (9th Cir. 2012) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" Id. (quoting

Iqbal, 556 U.S. at 678).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Id. (citing Twombly, 550 U.S. at 555).  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557).

When the Court dismisses a complaint pursuant to Rule 12(b)(6) it should grant leave to amend unless the pleading cannot be cured by new factual allegations.  OSU Student All. v. Ray, 699 F.3d 1053, 1079 (9th Cir. 2012).

## II.  Special Considerations for Pro Se Litigants

Pro se pleadings and briefs are to be construed liberally.  Balisteri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).  The Court should act with leniency toward

pro se litigants when they technically violate a rule.  Draper
v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986); Motoyama v. Haw.
Dep't of Transp., 864 F. Supp. 2d 965, 976 (D. Haw. 2012).
However, pro se litigants are "not excused from knowing the most
basic pleading requirements."  Am. Ass'n of Naturopathic
Physicians v. Hayhurst, 227 F.3d 1104, 1107 (9th Cir. 2000).
Pro se litigants must follow the same rules of procedure that
govern other litigants.  Motoyama, 864 F. Supp. 2d at 976.

## DISCUSSION

        Although Plaintiff's Amended Complaint and late-filed
addendum elaborate at length on his various asserted causes of
action, at bottom, Plaintiff's factual allegations remain the
same as those already dismissed by this Court.  See ECF No. 29,
Order Granting Defendants' Motion to Dismiss ("Prior Order").
Plaintiff's host of newly-added conclusory allegations do not
revive his arguments, and the Court finds Plaintiff has once
again failed to state a claim.

I.    **Threshold Procedural Issues**

   a. **The Statute of Limitations Does Not Bar Plaintiff's
      Claims**

        In its Prior Order, the Court raised, but did not rule
on, a potential statute of limitations issue.  Prior Order at 9-
10 n.1.  It explained:

> Section 1983 actions are subject to a two-year statute of limitations in Hawai'i. <u>Bird v. Dep't of Human Servs.</u>, 935 F.3d 738, 743 (9th Cir. 2019) . . . Plaintiff filed his Complaint on August 5, 2019—two years and one day after the alleged incident.  Plaintiff alleges that he did not learn about Defendant Nielson's failure to file his statement or about [] Defendant Nielson's inaccurate police report, however, until August 21 and August 23, 2017, respectively—within the two-year limitations period.  The Court need not rule on the limitations issue now because the Complaint must be dismissed on other, substantive grounds.  But, in the event Plaintiff refiles his claims and asserts violations based on the August 4, 2017 encounter, he will need to provide a basis for why his action is timely.

<u>Id.</u>; <u>see also</u> City's Mot. at 4; Nielson's Mot. at 4.

The Court now holds that Plaintiff's claims are not barred by the statute of limitations.  Under Rule 6, because the last day of a limitations period was a Sunday—August 4, 2017—the limitations period continued to run until the end of the following Monday, August 5, 2017.  Fed. R. Civ. Pro. 6(a)(1).  Plaintiff filed his complaint on August 5, 2017, and was thus timely.  ECF No. 1.

### b. Plaintiff Must Assert a Cause of Action for His Constitutional Claims

Plaintiff once again fails to allege any specific cause of action for his constitutional claims.  He is apparently attempting to directly sue for violations of his constitutional rights despite the established law that there is "no cause of action directly under the United States Constitution" and "a

litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983." <u>Azul-Pacifico, Inc. v. City of Los Angeles</u>, 973 F.2d 704, 705 (9th Cir. 1992); <u>see also</u> <u>Arpin v. Santa Clara Valley Transp. Agency</u>, 261 F.3d 912, 925 (9th Cir. 2001).  In light of Plaintiff's pro se status, the Court will once again construe Plaintiff's constitutional claims as asserted under 42 U.S.C. § 1983.  <u>See</u> Prior Order at 9-10.

### c. Claims Against Defendant Nielson in his Official-Capacity and Against HPD are Redundant

Plaintiff again sues Defendant Nielson in his individual and official capacity.  As stated in the Prior Order, the official-capacity claims are redundant of the claims against the City and are dismissed for that reason.  Prior Order at 13.  The subsequent discussion of Plaintiff's claims against Defendant Nielson relate to Defendant Nielson's liability in his individual capacity only.

Plaintiff also again names the Honolulu Police Department as an additional defendant in this case.  As stated in the Prior Order, the Honolulu Police Department is a division of the City and is not separately subject to suit.  Prior Order at 10.  The Honolulu Police Department is therefore dismissed.

### d. Judicial Notice of the Police Report is Not Necessary

In their joint Reply, Defendants ask the Court "to disregard all references to Police Report No. 17-29214 outside

the allegations in the FAC" because a police report is not a
matter of public record and therefore not subject to judicial
notice.  Reply at 7 n.2.  Defendants contend that were the Court
to consider the police report, it would convert the motion to
dismiss into a motion for summary judgment.  Id.

The Court may "consider certain materials—documents
attached to the complaint, documents incorporated by reference
in the complaint, or matters of judicial notice—without
converting the motion to dismiss into a motion for summary
judgment."  United States v. Ritchie, 342 F.3d 903, 908 (9th
Cir. 2003).  Plaintiff has not moved for judicial notice of the
police report, but has included an image of the report in his
Amended Complaint, FAC at 12, and attached it to the Amended
Complaint as Exhibit 4.  The Court is therefore permitted to
consider the police report for purposes of the motions to
dismiss.  Because Plaintiff includes allegations in his Amended
Complaint concerning the portions of the police report he finds
objectionable, the Court focuses on those regardless.

**II.  Plaintiff Fails to State a Claim Under the First
Amendment**

Plaintiff claims that Defendants are liable for
violating his First Amendment rights because Defendant Nielson
(1) did not file Plaintiff's documents in HPD's records;
(2) improperly disposed of Plaintiff's documents; (3) filed a

police report with allegedly false information; and (4) stood too close to Plaintiff to block Plaintiff's camera.  FAC at 19-26.

As to (1) and (2), Plaintiff alleges that Defendant Nielson took those actions for Defendant Nielson's benefit and because Defendant Nielson "did not like the subject matter of my speech."  FAC at 19-21.  Plaintiff also states these actions were discriminatory.  Id.  As to (3), Plaintiff alleges that Defendant Nielson filed a false police report to further his goals of obstructing Plaintiff's speech, and that this action was also discriminatory.  FAC at 21-22.  Finally, Plaintiff alleges that Defendant Nielson standing close to Plaintiff in order to block his camera amounted to threatening behavior, and that "Nielson did ultimately retaliate" by the allegedly false police report.  FAC at 22-23.

Defendants characterize Plaintiff as again asserting a retaliation claim.[3/]  Plaintiff's Opposition does not address his First Amendment claims.  The Court understands Plaintiff's

_____

[3/] Defendants characterize Plaintiff's First Amendment claim this way in their respective motions.  Plaintiff does not respond to Defendants' arguments on the First Amendment; in fact, in his Opposition, Plaintiff includes a "Summary of Alleged Constitutional Violations" and only includes sections on the Fourth, Fifth, and Fourteenth Amendments.  Opp. at 12-16.  Plaintiff has therefore at least conceded the retaliation construction, and arguably has waived the argument entirely.  See Shakur v. Schriro, 514 F.3d 878, 892 (9th Cir. 2008) ("We have previously held that a plaintiff has 'abandoned ... claims by not raising them in opposition to [the defendant's] motion for summary judgment.'" (alteration in original) (quoting Jenkins v. Cty. of Riverside, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005))).  Because Plaintiff is pro se, however, the Court liberally construes his Amended Complaint.

Amended Complaint as asserting that (1) Plaintiff was prevented from exercising his right to speak freely into HPD's records archives; and (2) Plaintiff was retaliated against for his speech.  Under either characterization, Plaintiff fails to state a claim.

### a. Restricting Plaintiff from Speaking into HPD's Records Archives was Permissible

Plaintiff asserts that Defendant "Nielson impeded my right to speak in a public archive system set up for citizens to speak publicly either to HPD or to others who access the archive through public information (FOIA) in the future."  FAC at 19.  Plaintiff thus appears to be asserting that HPD's record archives are a type of public forum, and he was impermissibly prevented from speaking in that forum.

### i. HPD's Records Archives are a Limited Public Forum

"The Supreme Court has classified forums into three categories: traditional public forums, designated public forums, and limited public forums."[4/]  Seattle Mideast Awareness Campaign v. King Cty., 781 F.3d 489, 496 (9th Cir. 2015) (citing Int'l Soc'y for Krishna Consciousness, Inc. v. Lee (ISKCON), 505 U.S. 672, 678–79, 112 S. Ct. 2701, 120 L. Ed. 2d 541 (1992)).  In both traditional and designated public forums, the government may not discriminate against speech based on its content unless

_____

[4/] Limited public forums are sometimes referred to a nonpublic forums.  Seattle Mideast, 781 F.3d at 496 n.2 (citations omitted).

the restriction can survive strict scrutiny.  Id.  In limited public forums, however, "content-based restrictions are permissible, as long as they are reasonable and viewpoint neutral."  Id. (citation omitted).

"Traditional public fora are defined by the objective characteristics of the property, such as whether, 'by long tradition or by government fiat,' the property has been 'devoted to assembly and debate.'"  Arkansas Educ. Television Comm'n v. Forbes, 523 U.S. 666, 677, 118 S. Ct. 1633, 1641, 140 L. Ed. 2d 875 (1998) (quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45, 103 S. Ct. 948, 954, 74 L. Ed. 2d 794 (1983)).

In contrast, designated public forums are those which the government purposefully creates "by intentionally opening a nontraditional public forum for public discourse."  Id. (quoting Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 802, 105 S. Ct. 3439, 3449, 87 L. Ed. 2d 567 (1985)). To determine whether the government has created a designated public forum, courts look to "the policy and practice of the government to ascertain whether it intended to designate a place not traditionally open to assembly and debate as a public forum."  Id.

Finally, the limited public forum "refer[s] to a type of nonpublic forum that the government intentionally has opened

to certain groups or to certain topics." <u>DiLoreto v. Downey
Unified Sch. Dist. Bd. of Educ.</u>, 196 F.3d 958, 965 (9th Cir.
1999).

HPD's record archives are a limited public forum.  The
archives are not the type of traditional forum historically held
open for public debate.  Nor is there any indication in
Plaintiff's Amended Complaint that HPD has intentionally opened
its archives for public discourse.  Rather, because HPD has
granted "only 'selective access,' by imposing either speaker-
based or subject-matter limitations, it has created a limited
public forum." <u>Seattle Mideast</u>, 781 F.3d at 497.

Plaintiff appears to argue that HPD's records archives
are a designated public forum "set up for citizens to speak
publicly either to HPD or to others who access the archive
through public information request (FOIA) in the future," FAC at
19, and that HPD has no right to regulate "when I speak, or, for
how long I speak into a public records archive," FAC at 20.
Plaintiff's allegations are conclusory.  Plaintiff fails to
provide factual allegations that show HPD permits generalized
access for any person to file statements of any subject or
length in its records archives.  <u>See Seattle Mideast</u>, 781 F.3d
at 498 (9th Cir. 2015) (finding a bus advertising program
constituted a limited public forum rather than a designated
public forum, explaining that "[f]or forum-classification

- 15 -

purposes, the relevant question is whether the County has granted generalized access to the forum as a matter of course"). Police records are not, by nature, "designed for and dedicated to expressive activities." Id. at 497.  The Court is unaware of any holding that police records archives constitute a forum for public discourse and Plaintiff does not show HPD has intentionally designed its records archives for that purpose.

Because the Court finds HPD's records archives are a limited public forum, it therefore applies a reasonableness analysis.

### ii. Restricting Plaintiff's Speech Passes a Reasonableness Analysis

"[T]he State can restrict access to a limited public forum as long as (1) the restriction does not discriminate according to the viewpoint of the speaker, and (2) the restriction is reasonable." Cogswell v. City of Seattle, 347 F.3d 809, 814 (9th Cir. 2003); see also Reza v. Pearce, 806 F.3d 497, 503 (9th Cir. 2015) ("In addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." (quoting Perry Educ., 460 U.S. at 46)).

A review of Plaintiff's Amended Complaint, specifically including the video and transcript of the interaction with Defendant Nielson, indicates that Defendant Nielson did not file Plaintiff's statement because of the purported ongoing investigation by the attorney general. Ritchie, 342 F.3d at 908 (the Court may consider documents attached to the complaint for purposes of a motion to dismiss). Plaintiff's documents and complaint were already on file with the attorney general's office when Plaintiff approached Defendant Nielson; and Plaintiff specifically told Defendant Nielson that the attorney general was already investigating the matter. FAC, Ex. B at 5-6, see also FAC at 25. Defendant Nielson explained to Plaintiff that when the attorney general is reviewing a matter, HPD "usually let[s] them take care of it" to avoid "two agencies at the same time investigating" the same complaint. FAC, Ex. B at 6. Defendant Nielson stated that if Plaintiff was not satisfied with the attorney general's investigation after it concluded, Plaintiff could then request action by HPD. FAC, Ex. B at 6. Such a restriction is viewpoint neutral and reasonable.

Although Plaintiff submits these statements by Defendant Nielson, Plaintiff asserts that Defendant Nielson actually did not file his statement because Defendant Nielson did not like the subject matter of the statement. FAC at 20.

- 17 -

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). Plaintiff's Amended Complaint fails to provide factual allegations showing that the content or viewpoint of Plaintiff's speech—which related to a claim against an Allstate insurance agent—was the reason that Defendant Nielson did not file it in HPD's records.[5]

In sum, the factual allegations in Plaintiff's Amended Complaint suggest that HPD does not generally accept complaints into its records if those complaints are already being investigated by another state agency, as Plaintiff asserts his were.  That restriction is viewpoint neutral and reasonable. Therefore, HPD did not violated Plaintiff's First Amendment rights by failing to file his documents in the limited public forum of HPD's records archives.

### b. Defendant Nielson Did Not Retaliate Against Plaintiff for His Speech

Plaintiff appears to again assert a retaliation claim. "To state a First Amendment retaliation claim, a plaintiff must plausibly allege 'that (1) he was engaged in a constitutionally

---

[5] Plaintiff does allege that Allstate's "close proximity to HPD also cannot be ignored, HPD is at 801 S. Beretania St., and the [Allstate] Agency is at 800 S. Beretania St., leaving the impression that there's more to the [Allstate] Agency's proximity to HPD than meets the eye."  FAC at 42-43.  The Court does not find the location of HPD's building and Allstate's building suggestive of any constitutional violation.

protected activity, (2) the defendant's [adverse] actions would

chill a person of ordinary firmness from continuing to engage in

the protected activity and (3) the protected activity was a

substantial or motivating factor in the defendant's conduct.'"

Capp v. Cty. of San Diego, 940 F.3d 1046, 1053 (9th Cir. 2019)

(quoting O'Brien v. Welty, 818 F.3d 920, 932 (9th Cir. 2016)).

"[F]or adverse, retaliatory actions to offend the First

Amendment, they must be of a nature that would stifle someone

from speaking out," most commonly involving "'exercise[s] of

governmental power' that are 'regulatory, proscriptive, or

compulsory in nature' and have the effect of punishing someone

for his or her speech." Blair v. Bethel Sch. Dist., 608 F.3d

540, 544 (9th Cir. 2010) (second alteration in original)

(quoting Laird v. Tatum, 408 U.S. 1, 11, 92 S. Ct. 2318, 33 L.

Ed. 2d 154 (1972)).  "To prevail on such a claim, a plaintiff

must establish" that the defendant's retaliatory animus was the

"but-for" cause of plaintiff's injury, "meaning that the adverse

action against the plaintiff would not have been taken absent

the retaliatory motive." Nieves v. Bartlett, 139 S. Ct. 1715,

1722, 204 L. Ed. 2d 1 (2019).

This Court held in its Prior Order that Plaintiff had

failed to state a First Amendment retaliation claim in part

because Plaintiff had failed to explain specifically how his

First Amendment rights were violated.  Prior Order at 16-17.  In

his Amended Complaint, Plaintiff has clarified what specific
actions he believes violated his First Amendment rights.  But
Plaintiff largely fails to show that he was engaged in
constitutionally protected activity, has failed to provide any
additional allegations showing that a person of ordinary
firmness would have been chilled by Defendant Nielson's actions,
and only submits as a conclusory assumption that Defendant
Nielson was motivated to retaliate against Plaintiff based on
his protected activity.  Plaintiff therefore again fails to
state a First Amendment retaliation claim.

### i. Failure to File Plaintiff's Documents

First, Plaintiff argues that Defendant Nielson
retaliated against him when Defendant Nielson did not file
Plaintiff's documents in HPD's records.[6/]  While some district
courts have found that "[f]iling a police report may implicate
speech that is protected under the Petition Clause of the First
Amendment," Plaintiff here was not petitioning the government
for any redress.  Doe v. Cty. of San Mateo, No. C 07-05596 SI,
2009 WL 735149, at *5 (N.D. Cal. Mar. 19, 2009) (citations
omitted) (further noting there is no corresponding "right to a

---

[6/] The Court notes that the City represents in its Motion that
"Plaintiff's statement and accompanying documents—totaling 115 pages—are on
file with the HPD under Police Report No. 17-29214, which reflects Plaintiff
and Defendant Nielson's August 4, 2017 encounter."  City's Mot. at 24.
Plaintiff refers to these as "random unknown documents" and takes issue with
the fact he has to pay HPD to view the documents on file.  Opp. at 10.
Plaintiff apparently has not done so, but states that his two-page statement
and submitted CD are missing.  Opp. at 10.

response or any particular action when a citizen petitions the government for redress of grievances"). Rather, Plaintiff explains that he "just wanted to document the matter with HPD" because the matter was already "under criminal and civil investigation at the State Attorney General's office."[7]  FAC at 5-6, 25.

Regardless, these are not new allegations and the Court already found that a person of ordinary firmness would not be chilled from future protected activity based on Defendant Nielson's failure to file a statement in HPD's records.  Prior Order at 19.

Plaintiff further fails to show that Defendant Nielson's failure to file the documents constituted an adverse action.  Except for Plaintiff's two-page statement, the "100+ pages" of documents were already on file with the state attorney general's office.  FAC at 9, 24.  Notably, the purportedly missing two-page statement is functionally a description of those 100+ pages of documents.  FAC, Ex. 3.  Plaintiff's only apparent injury is that "others who access the archive through public information requests (FOIA) in the future" will not locate his statement.  FAC at 19.  This is simply too peripheral

---

[7] Indeed, it would appear that having "documented the matter with the state attorney general's office" Plaintiff achieved his sought goal of establishing a sufficient record of his concerns regarding the alleged falsification of his insurance matters at Allstate.

an injury to qualify as an adverse action effectively punishing Plaintiff for his speech.  See Blair, 608 F.3d at 544 (requiring an adverse retaliatory action to have the effect of punishing someone for his speech).

Plaintiff also fails to provide factual allegations supporting any improper motive by Defendant Nielson; he relies on the conclusory statements that he believed Defendant Nielson would benefit from failing to file his statement, that Defendant Nielson did not like the subject matter of his statement, and suggests that Defendant Nielson had some type of discriminatory animus.  For a First Amendment retaliation claim, the retaliation must be motivated by Plaintiff's protected activity, so any personal benefit or discriminatory animus attributed to Defendant Nielson would not support that claim.[8/]  If Defendant Nielson retaliated against Plaintiff because he did not like the subject matter of Plaintiff's statement, that would support a retaliation claim, but Plaintiff fails to provide factual allegations supporting this conclusion.  Plaintiff's allegations are conclusory and not plausible.  This is insufficient to maintain a retaliation claim.

---

[8/] It is also unclear what benefit Defendant Nielson would glean or on what basis Plaintiff believes he was discriminated against.  The Court further addresses Plaintiff's claims of discrimination in its discussion of his Fourteenth Amendment equal protection claim.

### ii.  Improper Disposal of Plaintiff's Documents

Plaintiff contends that once Defendant Nielson became aware that Plaintiff was video-recording the encounter, Defendant Nielson accepted Plaintiff's documents and later disposed of them.  Accepted as true, Defendant Nielson's actions are concerning.  Nevertheless, the Court again finds that this would not chill a person of ordinary firmness from future First Amendment activity, particularly where everything submitted save a two-page inventory was already on file with another state agency.  See Capp, 940 F.3d at 1053; Prior Order at 17-19.

Plaintiff also fails to provide factual allegations supporting the contention that Defendant Nielson was motivated to retaliate against Plaintiff based on Plaintiff's protected activity.  Id.  Plaintiff argues the same bases for Defendant Nielson's improper motive as in his prior claim:  that Defendant Nielson would benefit, did not like the subject matter of Plaintiff's speech, and was acting with discriminatory animus.  As already stated, these conclusory allegations are insufficient.

### iii.  Allegedly False Police Report

In its Prior Order, the Court explained that Plaintiff's allegations regarding Defendant Nielson filing a police report containing false information does not state a claim for First Amendment retaliation.

> Plaintiff does not allege that the false
> information in the report led to any
> investigation, arrest, or further official action
> whatsoever.  The Ninth Circuit has held that
> retaliation claims based on government speech—
> even where that speech "undoubtedly damaged" the
> plaintiff's reputation—must "meet a high
> threshold." Mulligan v. Nichols, 835 F.3d 983,
> 989-90 (9th Cir. 2016).  "[I]n the absence of a
> threat, coercion, or intimidation intimating that
> punishment, sanction, or adverse regulatory
> action will imminently follow," retaliation in
> the nature of speech does not violate Plaintiff's
> First Amendment rights. Id. (quoting Suarez
> Corp. Indus. v. McGraw, 202 F.3d 676, 687 (4th
> Cir. 2000)).

Prior Order at 19.

Plaintiff has not offered new factual allegations

altering this analysis, and his claim is again deficient.

### iv. Standing Too Close to Plaintiff's Camera

This circuit recognizes a "First Amendment right to

film matters of public interest." Fordyce v. City of Seattle,

55 F.3d 436, 439 (9th Cir. 1995) (involving the video recording

of a public protest, including the actions of police officers

assigned to work the event).  Plaintiff does not allege that he

was prevented from doing so; in fact, Plaintiff submits the

entire recording to the Court as part of his Amended Complaint.

Instead, Plaintiff asserts that while he was recording,

Defendant Nielson stood too close to him, thereby obstructing

the view of the camera.  FAC at 22-23.

First, Plaintiff was not prevented from filming, but only had some portion of the camera's view blocked by Defendant Nielson's body.  This occurred during an encounter where Plaintiff was asking Defendant Nielson to physically take documents from his hands, requiring a certain level of proximity.  And, the Court notes that Plaintiff could have remedied his own concerns by merely taking a step back.

Second, standing uncomfortably close while taking Plaintiff's documents, in an encounter that Plaintiff initiated, all the while permitting Plaintiff to continue filming, does not constitute an adverse action and would not chill a person of ordinary firmness from filming police activity in the future.

Third, there are no factual allegations showing that Defendant Nielson's proximity to Plaintiff was motivated by Plaintiff's filming of the encounter.  The two men were engaged in an ongoing interaction, which, as stated above, required a certain level of proximity.

Plaintiff has failed to state a claim under the First Amendment.

### III. Plaintiff Fails to State a Claim Under the Fourth Amendment

Plaintiff's Amended Complaint adds a Fourth Amendment claim.  Plaintiff asserts that Defendant Nielson unlawfully seized his documents without a warrant or probable cause.  FAC

at 26-27.  Plaintiff acknowledges that he voluntarily handed his documents over to Defendant Nielson, but asserts this occurred "under false pretenses," which "transformed" the encounter "into a nonconsensual, unreasonable seizure" of his documents.  FAC at 27.

Plaintiff further asserts that Defendant Nielson violated his Fourth Amendment right to privacy because the documents that he alleges Defendant Nielson unlawfully seized "are subject to redactions prior to public dissemination had they been properly processed into HPD's Records archives as intended."  FAC at 28.

### a. Seizure of Documents

Plaintiff asserts that Defendant Nielson unlawfully seized his documents.  FAC at 26-28.  The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST., amend. IV.  "A seizure is a meaningful interference with an individual's possessory interests in his property."  Brewster v. Beck, 859 F.3d 1194, 1196 (9th Cir. 2017) (internal quotation marks and citation omitted).

Courts have been faced with many difficult Fourth Amendment questions.  This is not one.  Plaintiff called Defendant Nielson to the scene and demanded Defendant Nielson

take his documents.  Plaintiff makes much of the allegation that Defendant Nielson initially refused to take those documents, and Plaintiff had to press Defendant Nielson to do so.  That Defendant Nielson ultimately took those documents is therefore not an unlawful seizure.  "[W]here a person consents to search and seizure, no possessory interest has been infringed because valid consent, by definition, requires voluntary tender of property."  United States v. Uu, 293 F. Supp. 3d 1209, 1214 n.7 (D. Haw. 2017) (quoting United States v. Stabile, 633 F.3d 219, 235 (3d Cir. 2011)).

### b. Right to Privacy

Plaintiff asserts that Defendant Nielson violated his right to privacy because his documents required redactions prior to public dissemination.  FAC at 28.  "Although no single rubric definitively resolves which expectations of privacy are entitled to protection, the analysis is informed by historical understandings 'of what was deemed an unreasonable search and seizure when [the Fourth Amendment] was adopted.'"  Carpenter v. United States, 138 S. Ct. 2206, 2213–14, 201 L. Ed. 2d 507 (2018) (footnote omitted) (quoting Carroll v. United States, 267 U.S. 132, 149, 45 S. Ct. 280, 69 L. Ed. 543 (1925)) (alteration in original).  The Supreme Court has noted two guideposts in this analysis:  first, "that the Amendment seeks to secure the privacies of life against arbitrary power," and second, "to

place obstacles in the way of a too permeating police surveillance." Id. at 2214 (internal quotation marks and citations omitted).

The crux of Plaintiff's Amended Complaint is that his documents were not ultimately filed in HPD's records archives available for public access.[9/]  Plaintiff's assertion that he needed to implement additional redactions prior to that purportedly public filing only undermines his claims.  If Plaintiff needed to further redact the documents prior to their filing, then it is fortunate that Defendant Nielson did not publicly file the documents, as Plaintiff spends most of his Amended Complaint asserting that he should have done.

In any event, any reasonable expectation of privacy in Plaintiff's documents has not been invaded where Plaintiff personally handed Defendant Nielson those documents and Defendant Nielson did nothing further with them.

Plaintiff has failed to state a claim under the Fourth Amendment.

---

[9/] Although it is not clear to the Court that HPD's records archives are "public," Plaintiff references this several times in his Amended Complaint. See, e.g., FAC at 19 ("Nielson impeded my right to speak in a public archive system set up for citizens to speak publicly either to HPD or to others who access the archive through public information (FOIA) in the future."); FAC at 27 (stating Defendant Nielson "had a duty to accept, preserve and process" Plaintiff's statement "into HPD's Records Division"); FAC at 28 (claiming Plaintiff's documents were "subject to redactions prior to public dissemination had they been properly processed into HPD's Records archives as intended").

IV.  **Plaintiff Fails to State a Claim Under the Fifth Amendment**

Plaintiff contends his Fifth Amendment right protecting against self-incrimination was violated when Defendant Nielson failed to file his documents in HPD's record archives.  FAC at 29-32.  Plaintiff explains that he "told Nielson that I was submitting my statement and evidence to clear my wife and me from criminal implications, yet he improperly disposed it and lied about it in his official Police Report, thereby interfering with my right to not be a witness against myself."  FAC at 30.

Setting aside that Defendant Nielson at no time compelled Plaintiff to make any statement, Plaintiff misunderstands the scope of the Fifth Amendment.  The Fifth Amendment provides that "[n]o person . . . shall be compelled <u>in any criminal case</u> to be a witness against himself."  U.S. CONST., amend. V (emphasis added).  Plaintiff is not being prosecuted in a criminal case, and the self-incrimination clause of the Fifth Amendment therefore does not apply.  <u>Chavez v. Martinez</u>, 538 U.S. 760, 766, 123 S. Ct. 1994, 2000, 155 L. Ed. 2d 984 (2003) ("We fail to see how, based on the text of the Fifth Amendment, Martinez can allege a violation of this right [against self-incrimination], since Martinez was never

prosecuted for a crime, let alone compelled to be a witness against himself in a criminal case.").

Plaintiff's belief that some eventual criminal proceedings might occur is insufficient.  The Supreme Court has rejected the view that a "criminal case" encompasses the entire criminal investigatory process, holding instead that "a 'criminal case' at the very least requires the initiation of legal proceedings."  Id. (citations omitted).

In the absence of any criminal proceedings, Plaintiff does not have a self-incrimination claim under the Fifth Amendment.

## V.  Plaintiff Fails to State a Claim Under the Fourteenth Amendment

Plaintiff argues that Defendants violated his Fourteenth Amendment rights in three ways:  (1) depriving him of his property without due process; (2) violating his right to privacy; and (3) discriminating against him.  The Court addresses each claim.

### a. Deprivation of Property Without Due Process

First, Plaintiff claims that he was deprived of his property without due process.  He argues that Defendant Nielson took his documents under false pretenses without giving Plaintiff notice as to why he was doing so and without giving Plaintiff an opportunity to be heard by a neutral decision

maker.  FAC at 33.  Because Plaintiff appears to be objecting to the procedure by which Defendant Nielson took the documents, the Court understands Plaintiff to be asserting a procedural due process claim.[10]

"A procedural due process claim has two elements: deprivation of a constitutionally protected liberty or property interest and denial of adequate procedural protection." Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ., 616 F.3d 963, 970 (9th Cir. 2010) (citing Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998)).

Plaintiff had a property interest in his documents, but he was not deprived of that property interest.  Plaintiff

---

[10] Defendants construe Plaintiff's Amended Complaint as including a due process claim in relation to the allegedly false statements in Defendant Nielson's police report.  City's Mot. at 16-17; Nielson's Mot. at 11-13.  The Court does not find that claim in the Amended Complaint, but if it was, the Court already rejected the claim in the Prior Order:

> "To the extent Plaintiff's Fourteenth Amendment claim is based on alleged falsehoods in the police report, he is advised that the filing of a false police report itself does not amount to a constitutional violation."  Williams v. Jurdon, No. 117CV00860LJOMJS, 2017 WL 3981405, at *3 (E.D. Cal. Sept. 11, 2017) (citing Landrigan v. City of Warwick, 628 F.2d 736, 744-45 (1st Cir. 1980)); see also Moreno v. Idaho, No. 4:15-CV-00342-BLW, 2017 WL 1217113, at *16 n.20 (D. Idaho Mar. 31, 2017) (holding same); McKinley v. United States, No. 3:14-CV-01931-HZ, 2015 WL 4663206, at *11 (D. Or. Aug. 5, 2015) (holding same).  The Court notes that the filing of a false police report can provide the basis for a § 1983 action if constitutional harm flows from the filing of a false report, but Plaintiff has not pointed to constitutional harm flowing from the filing of the report.  See generally Compl.; Williams, 2017 WL 3981405 at *3.

Prior Order at 22.

voluntarily handed over his documents to Defendant Nielson and demanded that Defendant Nielson take them.  Defendant Nielson eventually complied.  Because Plaintiff was not deprived of his property, but requested a government official take the property, he cannot assert a procedural due process claim for that taking.

> ### b. Right to Privacy

Second, Plaintiff argues that Defendant Nielson violated his right to privacy under the Due Process Clause of the Fourteenth Amendment when taking his documents that "contained private, personal, sensitive, privileged information and privileged communications . . . subject to redactions prior to public dissemination."  FAC at 33.

"Although '[t]he Constitution does not explicitly mention any right of privacy,' the Court has recognized that one aspect of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment is 'a right of personal privacy, or a guarantee of certain areas or zones of privacy.'"  Carey v. Population Servs., Int'l, 431 U.S. 678, 684, 97 S. Ct. 2010, 2016, 52 L. Ed. 2d 675 (1977) (quoting Roe v. Wade, 410 U.S. 113, 152, 93 S. Ct. 705, 726, 35 L. Ed. 2d 147 (1973)) (alteration in original).  "This right includes at least two constitutionally protected privacy interests: the right to control the disclosure of sensitive information and the right to independence [in] making certain kinds of important decisions."

Parents for Privacy v. Barr, 949 F.3d 1210, 1222 (9th Cir. 2020)
(internal quotation marks and citation omitted) (alteration in
original).

        As discussed in the analysis of Plaintiff's asserted
Fourth Amendment right to privacy, Plaintiff's claim is
undermined by his voluntary provision of the documents to
Defendant Nielson.  Plaintiff largely alleges that Defendant
Nielson's violations involved his failure to file the documents
in HPD's records archives available for public access.  Having
personally told Defendant Nielson to file the documents,
Plaintiff cannot simultaneously allege that he needed to make
additional redactions before the documents were filed.

        Moreover, Plaintiff alleges that the documents were
never actually filed.  See FAC at 4 (Plaintiff asserts his
documents "are still missing from the Honolulu Police
Department's Records Division, I verified this with Sgt. McGuire
in around November 2019.").  The only person in possession of
his documents is the person whom Plaintiff voluntarily provided
the documents to.  Thus, no privacy interests were invaded.

        Plaintiff fails to state a claim for violation of a
Fourteenth Amendment right to privacy.

        **c. Equal Protection**

        Third, Plaintiff alleges that he was discriminated
against when Defendant Nielson rejected his documents and

misstated facts on his police report, thereby treating Plaintiff
"differently from other people who file written statements with
the Honolulu Police Department" and violating his right to equal
protection.  FAC at 34.

   "To state a claim under 42 U.S.C. § 1983 for a
violation of the Equal Protection Clause of the Fourteenth
Amendment a plaintiff must show that the defendants acted with
an intent or purpose to discriminate against the plaintiff based
upon membership in a protected class."  <u>Barren v. Harrington</u>,
152 F.3d 1193, 1194 (9th Cir. 1998) (citations omitted).  "Our
cases have recognized successful equal protection claims brought
by a 'class of one,' where the plaintiff alleges that she has
been intentionally treated differently from others similarly
situated and that there is no rational basis for the difference
in treatment."  <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562,
564, 120 S. Ct. 1073, 1074, 145 L. Ed. 2d 1060 (2000) (citations
omitted).

     **i. Class of One**

   "The class-of-one doctrine does not apply to forms of
state action that 'by their nature involve discretionary
decisionmaking based on a vast array of subjective,
individualized assessments.'"  <u>Towery v. Brewer</u>, 672 F.3d 650,
660 (9th Cir. 2012) (quoting <u>Engquist v. Oregon Dep't of Agric.</u>,
553 U.S. 591, 603, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008)).

"Absent any pattern of generally exercising the discretion in a particular manner while treating one individual differently <u>and</u> detrimentally, there is no basis for Equal Protection scrutiny under the class-of-one theory." <u>Id.</u> at 660-61 (emphasis in original).  That is, "the existence of discretion, standing alone, cannot be an Equal Protection violation."  <u>Id.</u> at 661.

Plaintiff here contends that he was treated differently from others who file written statements with the Honolulu Police Department.  Plaintiff cites no law making it mandatory for HPD to file any documents in its records archive and his claim could be barred if based on a discretionary function.  Regardless, Plaintiff's claim fails because he has provided no factual allegations showing that others who attempt to submit paperwork merely to "document [a] matter with HPD" have been permitted to do so.  <u>Cf.</u> <u>Vill. of Willowbrook</u>, 528 U.S. at 565 (finding a complaint sufficiently stated a class of one claim where the plaintiff alleged that the village had demanded a 15-foot easement from similarly situated property owners, but demanded a 33-foot easement from her).

### ii. Whistleblower Status

Plaintiff additionally asserts that he was treated differently based on his membership in the protected class of whistleblowers, explaining that he "was whistleblowing (reporting) something which the Defendants wanted kept secret,

i.e. when I told Nielson HPD was targeting me and/or reporting the Allstate Agency." FAC at 34. But Plaintiff asserts his documents relate to the Allstate matter, not HPD targeting him. FAC at 5 ("I explained to Nielson, the matter involved an Allstate Insurance Agency . . ."). And, Plaintiff earlier asserts that the subject matter of his documents was already "under criminal and civil investigation at the State Attorney General's office," FAC at 5-6, so Plaintiff was not actually engaged in whistleblowing.

Plaintiff cites no authority for his status as a whistleblower and does not qualify under the federal or state statutes the Court has reviewed, which largely apply to employees. E.g., 5 U.S.C. § 2302; 31 U.S.C. § 3730(h); HRS § 378-62. Nor is it clear that whistleblowers are a protected class; at least one district court has held in the context of § 1985 that whistleblowers are not a protected class. Fox v. Cty. of Yates, No. 10-CV-6020, 2010 WL 4616665, at *4 (W.D.N.Y. Nov. 12, 2010) ("to the extent that Plaintiff is alleging class-based animus due to her status as a whistleblower, this is not a constitutionally protected class under § 1985" (citing Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 128 S. Ct. 2146, 2147, 170 L. Ed. 2d 975 (2008))).

Even if Plaintiff were a whistleblower and that was a protected class, Plaintiff fails to provide any factual

allegations suggesting that Defendant Nielson discriminated
against him based on any whistleblower status.

Plaintiff has not stated a claim for a violation of
the Fourteenth Amendment.

## VI.   Late-Filed Addendum

The Court dismissed Plaintiff's original complaint
without prejudice on December 17, 2019, and ordered any amended
complaint to be filed within 30 days.  Prior Order at 27.
Plaintiff filed his Amended Complaint on January 16, 2020.  ECF
No. 31.  A week later, Plaintiff filed an addendum seeking to
add additional claims and exhibits.  ECF No. 32.  The addendum
is not timely and Plaintiff has not provided good cause for its
late submission.  The Court declines to consider it.

### a. Plaintiff's Arguments are Insufficient

Plaintiff makes two arguments for why his late-filed
addendum should be considered.  First, he argues that Defendants
"dragged" him into this action and he should therefore not be
required to follow the rules.  Opp. at 4.  But Plaintiff
initiated this action, has chosen to pursue it in federal court,
and is therefore bound by the rules of this Court.  That
Plaintiff feels he has been wronged by Defendants does not
excuse him from following the rules, or else practically no
plaintiff would ever be required to do so.

Second, Plaintiff argues that he has felt stressed by this action and has dealt with health issues.  Opp. at 4. Plaintiff does not explain why these issues permitted him to file his nearly 50-page Amended Complaint and its seven exhibits on time, but precluded him from filing his Addendum until seven days later.

The Court rejects both of Plaintiff's asserted justifications for filing his Addendum late.

### b. Addendum is Not an Amended Complaint Under Rule 15

Plaintiff is entitled to one amendment of his complaint as a matter of course within 21 days after serving it. Fed. R. Civ. Pro. 15(a)(1); see also Ramirez v. Cty. of San Bernardino, 806 F.3d 1002, 1007 (9th Cir. 2015).  But Plaintiff's Addendum is not an amended complaint.  "It is well-established in our circuit that an amended complaint supersedes the original, the latter being treated thereafter as non-existent."  Ramirez, 806 F.3d at 1008 (internal quotation marks and citation omitted).  Plaintiff's Addendum refers to, expands on, and relies on the Amended Complaint, so he cannot intend for the Addendum to supplant it.

### c. The Addendum Fails to Add Colorable Claims

Even if the Addendum was considered on its merits, it would fail to add any colorable claims.[11]

Plaintiff's reference to his Fourth Amendment claims in his Addendum reiterate the claims already asserted in his Amended Complaint.  Compare Add. at 4 with FAC at 26-28.

The Court's prior Fifth Amendment analysis, stating that Plaintiff cannot invoke his right against self-incrimination in his own civil proceeding, applies equally to the additional causes of action Plaintiff attempts to assert thereunder in his Addendum.  Add. at 4.

Plaintiff's Addendum attempts to allege four additional Fourteenth Amendment due process violations, all of which fail.  First, Plaintiff attempts to add a claim for Defendant Nielson's initial rejection of Plaintiff's documents, Add. at 2, while his Amended Complaint asserts a violation for Defendant Nielson ultimately taking those documents, FAC at 33. Defendant Nielson's initial rejection and ultimate acceptance of Plaintiff's documents occurred over the course of less than ten minutes.  FAC Ex. 2.  These are not separate actions giving rise to two separate claims.  Plaintiff alleges that Defendant Nielson ultimately took the documents and cannot allege a

---

[11] Plaintiff's Addendum attempts to add causes of action, not factual allegations.

separate cause of action for Defendant Nielson's initial refusal to do so minutes prior.

Plaintiff's Addendum also attempts to add causes of action under the Due Process Clause of the Fourteenth Amendment for Defendant Nielson's failure to submit Plaintiff's documents to HPD, and Defendant Nielson's improper disposal of those documents.  Add. at 2-3.  As discussed in its analysis of the Fourteenth Amendment Due Process Clause, supra, Plaintiff has not asserted any property right of which he was deprived. Plaintiff voluntarily handed over his documents to the permanent custody of HPD.[12]  These claims would also fail.

Plaintiff's Fourteenth Amendment claim for the inaccurate police report fails, as this Court already discussed in its Prior Order.  Add. at 3, see Prior Order at 22, quoted supra n.10.

---

[12] Plaintiff's claim regarding Defendant Nielson's failure to submit Plaintiff's documents to HPD might be construed as a claim of a property interest in a benefit.  "'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.'"  Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 756, 125 S. Ct. 2796, 2803, 162 L. Ed. 2d 658 (2005) (quoting Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L.Ed.2d 548 (1972)).  Such entitlements "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  Id. (quoting Paul v. Davis, 424 U.S. 693, 709, 96 S. Ct. 1155, 1164, 47 L. Ed. 2d 405 (1976)); see also Doyle v. City of Medford, 606 F.3d 667, 672 (9th Cir. 2010).  "Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion."  Id.  While Plaintiff has asserted "a unilateral expectation" in the benefit of filing his statement with Defendant Nielson on August 4, 2017, he has pointed to no "independent source such as state law" for the conferral of that benefit.

Finally, Plaintiff attempts to assert claims under 18 U.S.C. § 242.  Add. at 6-7.  Plaintiff cannot do so because there is no private right of action under the criminal statute. 18 U.S.C. § 242; see also Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515, 153 L. Ed. 2d 666 (2002) (comparing the notice requirement for "[o]fficers sued in a civil action for damages under 42 U.S.C. § 1983" as compared with "defendants charged with the criminal offense defined in 18 U.S.C. § 242.").

Accordingly, the Court strikes Plaintiff's late-filed Addendum.

**VII. Qualified Immunity**

The Court has found that Plaintiff's constitutional and federal statutory rights were not violated.  However, even assuming that there was a violation of a constitutional or federal statutory right, the Court finds that Defendant Nielson is entitled to qualified immunity because any such right was not clearly established.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396

- 41 -

(1982)).  Qualified immunity is more than "a mere defense to liability." Id. at 237 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)).  Rather, it is immunity from the suit entirely.  Id.  The issue of qualified immunity is therefore important to resolve "at the earliest possible stage in litigation." Id. at 232 (quoting Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589 (1991)).

"To determine whether an individual officer is entitled to qualified immunity, we ask (1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." C.B. v. City of Sonora, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing Pearson, 555 U.S. at 232, 236).  "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Mullenix v. Luna, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (quoting Reichle v. Howards, 566 U.S. 658, 664, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012)).  "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" Id. (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)).

Plaintiff essentially asserts that Defendant Nielson violated his rights in two ways.  First, Defendant Nielson

failed to file his documents in HPD's records archives.  Second,
Defendant Nielson wrote a police report containing
misstatements.  Neither of these actions violate a clearly
established constitutional or federal statutory right.

        Plaintiff specifically explained to Defendant Nielson
that he was seeking duplicate documentation of a concern already
on file with the attorney general's office, that was being
investigated by the attorney general's office, and that he was
not seeking HPD's investigation of the matter.  See FAC, Ex. B
at 2-3, 6 (Plaintiff's transcript of his interaction with
Defendant Nielson, where he explains the documents were copies
of "three separate complaints that I filed with the AG's office"
and were "being investigated by the AG's office" so he was "just
documenting" and was "not actually asking [HPD] to investigate
it, I'm just documenting it").  In these circumstances, the
Court concludes there is no clearly established constitutional
or federal statutory right for Plaintiff to have his 100+ pages
of documents and CD filed by HPD into its records archives.

        Nor do the discrepancies in Defendant Nielson's police
report violate any clearly established constitutional or federal
statutory right.  As discussed above, Plaintiff has no
constitutional or federal statutory right to an accurate police
report, and even if he did, the contradictory case law shows

that right was not clearly established.[13/]   See Prior Order
at 22, quoted supra n.10.

       The Court finds there was no violation of Plaintiff's
federal statutory or constitutional rights; and even if there
had been, no such right was clearly established, so in any event
Defendant Nielson would be entitled to qualified immunity.[14/]

**VIII.   Municipal Liability for Constitutional Violations**

       The City asserts it cannot be held vicariously liable
for its employees' alleged constitutional violations and
therefore Plaintiff's constitutional claims against the City
must fail.  City's Mot. at 7.  The City is correct that it
cannot be held vicariously liable.  Gravelet-Blondin v. Shelton,
728 F.3d 1086, 1096 (9th Cir. 2013) ("While local governments
may be sued under § 1983, they cannot be held vicariously liable
for their employees' constitutional violations.").

---

       [13/] In an unpublished opinion, the Ninth Circuit recently held that a
police officer was entitled to qualified immunity where the plaintiff
asserted the police officer had falsified a police report and dash-cam
footage.  Hunt v. City of Boulder City, 799 F. App'x 533 (9th Cir. 2020)
(unpublished).  The Ninth Circuit noted that there is a clearly established
right not to be subjected to criminal charges on the basis of evidence
deliberately fabricated by the government, "[b]ut even if this evidence were
deliberately falsified, [the plaintiff] was not charged 'on the basis of'
either the dash-cam video or the police report," so the police officer was
"entitled to qualified immunity." Id.; see also McKinley v. United States,
No. 3:14-CV-01931-HZ, 2015 WL 4663206, at *11 (D. Or. Aug. 5, 2015)
("McKinley does not allege any future action based on that false report, and
therefore, McKinley cannot show that Officer Spinas violated one of
McKinley's 'clearly established' constitutional rights.").
       [14/] Because the Court finds qualified immunity applies, it does not
address Defendants' argument that Plaintiff has waived the ability to contest
qualified immunity by failing to challenge or contest it in his Opposition.
See Reply at 6.

- 44 -

Municipalities may be subject to liability under § 1983.  City's Mot. at 8.  To establish a § 1983 claim for municipal liability, Plaintiff must show four elements.  First, he must show "that he possessed a constitutional right of which he was deprived."  Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (internal quotation marks omitted).  As already discussed, the Court has found that Plaintiff was not deprived of any constitutional right.

Second, he must show "that the municipality had a policy."  Id.  Plaintiff vaguely refers to "unwritten corrupt practiced polices" and a "'culture of corruption' or 'culture of immorality,'" FAC at 14, but fails to sufficiently set out any particular policy, and further fails to support the existence of any such policy with factual allegations.  See Brooks v. City of Henderson, No. 2:14-CV-00374-GMN, 2015 WL 1241467, at *2 (D. Nev. Mar. 17, 2015) ("Plaintiff's Amended Complaint makes broad, conclusory allegations concerning improper polices or practices that are so vague as to be virtually meaningless and are not supported by any of Plaintiff's factual allegations.").

Third, Plaintiff must show "that this policy amounts to deliberate indifference to the plaintiff's constitutional right."  Oviatt, 954 F.2d at 1474.  "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."

Hyun Ju Park v. City & Cty. of Honolulu, 952 F.3d 1136, 1141
(9th Cir. 2020) (internal quotation marks and citation omitted).
Courts find deliberate indifference "when the need for more or
different action is so obvious, and the inadequacy of existing
practice so likely to result in the violation of constitutional
rights, that the policymakers of the city can reasonably be said
to have been deliberately indifferent to the need." Id. Here,
Plaintiff apparently tries to show a pattern of behavior
amounting to deliberate indifference by analogizing his own
situation to the conviction in the locally-publicized Kealoha
trial.  But Plaintiff has faced no criminal charges and has
provided no factual allegations showing that HPD attempted to
frame him for a crime.[15/]  Simply put, any similarities between
the Kealoha trial and Plaintiff's situation are tenuous at best.
Nor was that trial "so likely to result in the violation of"
Plaintiff's constitutional rights that the City can reasonably
be said to have been deliberately indifferent.

Fourth, Plaintiff must show "that the policy is the
moving force behind the constitutional violation." Oviatt, 954
F.2d at 1474.  Having failed to show a policy, and failed to

---

[15/] Plaintiff does assert that he believes the Allstate matter—the
subject of his documents—put him at risk for criminal prosecution.  FAC at 9.
Assuming this is true, Plaintiff fails to show any involvement by HPD.  That
Defendant Nielson wrote the incorrect insurance agency name on his police
report and that HPD's building is located close to Allstate's building does
not show that HPD attempted to frame Plaintiff for a crime.  See FAC at 9,
42-43.

show a constitutional violation, Plaintiff clearly cannot make
the requisite causation showing between the two.  Regardless,
Plaintiff's attempts to do so are conclusory and fail for that
reason.  FAC at 15-16 (asserting that Defendant Nielson "acted
outside of the Departments [sic] WRITTEN POLICIES, procedure and
training, choosing instead the Departments [sic] unwritten
practices policies, practiced by the 'culture of corruption'
within the Department").

        The Court therefore dismisses the municipal liability
claim against the City.

## IX.  Injunctive or Declaratory Relief

        In his Amended Complaint, Plaintiff requests that the
Court issue an Order requiring HPD to withdraw Defendant
Nielson's police report.  FAC at 46.  In his Opposition,
Plaintiff requests that, if he cannot prevail on his lawsuit,
the Court convert his complaint into a request for injunctive or
declaratory relief only.  Opp. at 11.  The Court notes that
Plaintiff has been given an opportunity to supplement the police
report by filing a statement (on HPD 252 Statement Form)
pointing out any errors or omissions in the police report.  ECF
No. 48.

        Moreover, "[t]o the extent Plaintiff[] seek[s]
declaratory and injunctive relief as an independent claim, the
Court follows the well-settled rule that a claim for such

- 47 -

relief, standing alone, is not a cause of action."  Amina v. WMC Fin. Co., 329 F. Supp. 3d 1141, 1166 (D. Haw. 2018) (citations omitted); see also Ramos v. Chase Home Fin., 810 F. Supp. 2d 1125, 1132-33 (D. Haw. 2011)).  In any event, all of Plaintiff's federal law claims are already dismissed and he has not established a federal law right to such injunctive or declaratory relief.

**X.   The Court Declines Supplemental Jurisdiction Over Plaintiff's State Law Claims**

Plaintiff includes an "Other" section in his causes of action, asserting Defendants are liable for "negligence, recklessness, malice, as well as, intentional infliction of severe emotional distress."  FAC at 35.  Because the Court has dismissed all claims over which it has original jurisdiction, the Court exercises its discretion and declines supplemental jurisdiction over these additional state law claims.

This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).  "The district courts may decline to exercise supplemental jurisdiction," however, if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."

<u>Carlsbad Tech., Inc. v. HIF Bio, Inc.</u>, 556 U.S. 635, 639, 129 S. Ct. 1862, 1866, 173 L. Ed. 2d 843 (2009) (citations omitted). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." <u>Sanford v. MemberWorks, Inc.</u>, 625 F.3d 550, 561 (9th Cir. 2010) (quoting <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988)).

Those factors point towards declining supplemental jurisdiction here. Judicial economy and convenience would not be served by this Court retaining jurisdiction over the state law claims—the Court has not yet issued any scheduling order, no discovery has taken place, and dismissal permits Plaintiff to file a fresh complaint in state court without the parties having expended significant resources pursuing litigation before this Court. Further, federal courts should avoid "[n]eedless decisions of state law . . . both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966). In the absence of any remaining federal claims,

the Court holds that Plaintiff's state law claims would be better ruled on by the state court.

That this Court addressed Plaintiff's state law claims in its Prior Order does not preclude the Court from exercising its discretion to decline to do so now.  In Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012), the Ninth Circuit held that the district court must exercise its discretion and decide whether it is appropriate to keep state law claims in federal court after dismissing all federal claims.  Id. at 940.  The Ninth Circuit held that district courts have this discretion even though, in that case, the district court had addressed the plaintiff's state law claims in a prior order.  Id. at 939-40. The Court notes here that Plaintiff's Amended Complaint asserts additional state law claims, and Defendants have raised additional state law defenses, beyond those addressed in the Prior Order.

In its discretion, the Court declines supplemental jurisdiction over Plaintiff's remaining state law claims.  The Court notes that if Plaintiff pursues litigation in state court, 28 U.S.C. § 1367(d) provides him 30 days to file that new action without impacting the limitations period for his claims.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant

the City and County of Honolulu's Motion to Dismiss, ECF No. 34, as to all of Plaintiff's federal law claims; GRANTS Defendant Nielson's Motion to Dismiss, ECF No. 35, as to all of Plaintiff's federal law claims; and DISMISSES all federal law claims against Defendants the City and County of Honolulu, Officer Nielson in both his individual and official capacities, and HPD; and the Court exercises its discretion to decline supplemental jurisdiction over Plaintiff's state law claims and accordingly DISMISSES them.  Because Plaintiff may be able to cure some of the pleading defects via amendment, leave to amend is granted and the Amended Complaint is dismissed without prejudice.  Any second amended complaint must be filed within thirty days of the issuance of this Order and should comply with the guidance and standards set forth herein.

        The Court cautions Plaintiff that if he fails to file his second amended complaint within thirty days of the issuance of this Order, the Court will dismiss Plaintiff's case with prejudice; or, if a claim in the second amended complaint fails to cure the defects identified in this Order, this Court will dismiss that claim with prejudice.  The Court emphasizes that it has not granted Plaintiff leave to make other changes, such as adding new parties or entirely new claims.  Leave to amend is limited to curing the defects described in this Order.  If Plaintiff wishes to make further amendments not within the scope

of leave provided in this Order, he must file a motion for leave

to amend pursuant to Rule 15(a)(2) and Local Rule 10.4.


            IT IS SO ORDERED.

            DATED:  Honolulu, Hawai'i, May 8, 2020.


                                    _____
                                    Alan C. Kay
                                    Sr. United States District Judge


Reno v. Nielson, et al., Civ. No. 19-00418 ACK-WRP, Order Granting
Defendants' Motions to Dismiss.